UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:21-cr-00047-JAW-1 |
| | ) | |
| EMMANUEL DIAZ | ) | |

**ORDER ON MOTION FOR COMPASSIONATE RELEASE**

An inmate serving a seventy-five-month sentence for unlawful possession of a firearm moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), citing his medical conditions and an amendment to the sentencing guidelines. The court considers the defendant's arguments for compassionate release and determines that they do not constitute extraordinary and compelling reasons justifying release. To support his motion, the inmate relies on United States Sentencing Guideline § 5H1.1, the amendment to the guidelines concerning the age of defendants when they committed prior crimes. However, § 5H1.1 fell within U.S.S.G. Part H of the Guidelines and, effective November 1, 2025, the United States Sentencing Commission deleted all of Part H, including U.S.S.G. § 5H1.1. Therefore, the deleted amendment does not now apply to the inmate's case. The court weighs the § 3553(a) factors against release in light of the seriousness of his offenses, his history and characteristics, including his criminal history, and the need for the sentence to fulfill the purposes of the law.

## I. BACKGROUND

On April 7, 2021, a federal grand jury indicted Emmanuel Diaz on one count of being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1) (Count

One).  *Indictment* at 1 (ECF No. 1).[1]  After pleading not guilty to the charge in Count One on May 27, 2021, *Min. Entry* (ECF No. 13) (*Initial Plea*), Mr. Diaz pleaded guilty on July 6, 2021.  *Min. Entry* (ECF No. 29) (*Change of Plea*).  Judge George Z. Singal accepted Mr. Diaz's change of plea on the same day.  *Id.*  On November 9, 2021, Judge Singal sentenced Mr. Diaz to seventy-five months of incarceration, three years of supervised release, and a mandatory $100 special assessment.  *Min. Entry* (ECF No. 52) (*Sent'g*); *see also J.* (ECF No. 55).  Mr. Diaz waived his right to be physically present and agreed to proceed by video at these appearances.  *Initial Plea*; *Change of Plea*; *Sent'g*.  Mr. Diaz did not appeal his conviction or sentence.

On August 18, 2025, Mr. Diaz filed a motion for compassionate release.  *Mot. for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release)* (ECF No. 63) (*Mot. for Compassionate Release*).[2]  On August 25, 2025, Mr. Diaz submitted a letter, providing further argument for his motion for compassionate release.  *Letter by Emmanuel Diaz* (ECF No. 67).  On September 15, 2025, the Government filed its response.  *Gov't's Resp. to Def.'s Mot. for Compassionate Release* (ECF No. 70) (*Opp'n*).  On September 23, 2025, Mr. Diaz submitted another supporting letter.  *Supporting Letter* (ECF No. 72).  Mr. Diaz did not reply to the Government's response to his motion for compassionate release.

---

[1]     The indictment included a forfeiture allegation.  *Indictment* at 2.  At his guilty plea, Mr. Diaz consented to the forfeiture of a Glock pistol and nineteen rounds of ammunition.  *Change of Plea*; *Prelim. Order of Forfeiture* (ECF No. 30).  On November 9, 2021, the Glock and ammunition were forfeited.  *Final Order of Forfeiture* (ECF No. 54).

[2]     By July 21, 2025, as Judge Singal was no longer presiding over criminal cases, the Clerk's Office randomly reassigned Mr. Diaz's case to this Judge.

## II.    THE PARTIES' POSITIONS

### A.    Emmanuel Diaz's Motion for Compassionate Release

In his memorandum, Mr. Diaz indicates that he is suffering from a medical condition that requires long-term or specialized care that he is not currently receiving at the Bureau of Prisons (BOP), thereby subjecting him to risk of serious decline in health or even death. *Mot. for Compassionate Release* at 4-5. Mr. Diaz lists his medication and durable medical equipment that he needs and provides the names of two individuals, his wife and mother, who he anticipates can help with his medical needs. *Id.* 10-11. Although Mr. Diaz submitted three attachments to his memorandum, one of which suggests that he intended to provide medical records, he failed to attach any actual medical records to his motion. *Id.*, Attach. 1, *Attach. 3*; *id.*, Attach. 2, *Attach. 2*. He asks the Court for appointed counsel to assist him in this matter. *Mot. for Compassionate Release* at 2.

In his separate letter, Mr. Diaz argues that he is entitled to compassionate release under a November 1, 2024 amendment to U.S.S.G. § 5H1.1 which made age a permissible factor to consider when sentencing.[3] *Letter by Emmanuel Diaz* at 1. Mr. Diaz explains the "priors. . . used to enhance my sentence are from 12/30/2008

---

[3]    The November 1, 2025 amendment deleted U.S.S.G § 5H1.1 in its entirety. *See* U.S. SENT'G GUIDELINES MANUAL, app. C, Amend. 836 (U.S. SENT'G COMM'N, 2025). The Commission explained that the removal of the Specific Offender Characteristics of Part H (including § 5H1.1) as follows:

> [T]his amendment . . . does not reflect a determination by the Commission that the rationale underlying the deleted departure provisions is no longer informative and does not serve as a limit to the information that judges who would have relied upon facts previously identified as a basis for departure will continue to have the authority to rely on such facts, or any other relevant factors, to impose a sentence outside of the applicable guideline range as a variance under 18 U.S.C. § 3553(a).

*Id.*, Reason for Amendment.

3

and 1/28/2014" at which time he was only eighteen and twenty-four. *Id.* at 1-2 (capitalization altered). On his read of the November 1, 2024 amendment to U.S.S.G. § 5H1.1, Mr. Diaz believes he "wasn't the required age that Congress" specified and "therefore . . . youthful[]ness and state charges [shouldn't] have been used against" him. *Id.* at 2. (capitalization altered). Had he been "sentenced today," he argues that the sentencing judge would have considered a lesser "criminal history" when considering "specific offender characteristic[s]." *Id.* He asks the Court to reduce his "term of imprisonment (and impose a term of supervised release without or with condition that does not exceed the unserved portion of the original term of the original term imprisonment)." *Id.* at 1 (capitalization altered).

In another letter, Mr. Diaz explains "I am writing . . . hoping that you will allow me [to] come home a little early so that I can find and [receive] the proper/specialized medical treatment I need and reunite with my loved ones." *Supporting Letter* at 3-4 (capitalization altered).

### B.    The Government's Opposition

The Government disagrees. It responds that Mr. Diaz "has not filed any medical documentation supporting his claim" and that "[h]e cannot meet his burden of establishing extraordinary and compelling reasons without any supporting medical documentation." *Opp'n* at 4. Further, the Government argues that Mr. Diaz "has not demonstrated how or why the 18 U.S.C. § 3553(a) factors weigh in favor of his request for compassionate release." *Id.* at 5.

The Government finds Mr. Diaz's argument for compassionate release for medical reasons unsubstantiated. The Government obtained medical records from BOP during the period 2022 to 2025 showing Mr. Diaz suffers from medical conditions, but the Government argues Mr. "Diaz has not provided the court with any evidence that he is receiving insufficient medical care." *Id.* at 4. The Government also points out that if the Court requires, it can supply the Court with the brief referenced in Mr. Diaz's administrative application but not attached to his compassionate release motion. *Id.* at 4, n.2. The Government also explains it obtained what appears to be Mr. Diaz's request to the Warden, *id.*, Attach. 1, *Ex. 1* (*Reduction in Sentence App.*), and the Warden's subsequent denial for lack of specific information. *Id.*, Attach. 2, *Ex. 2* (*Resp. to Inmate Req. to Staff Member*). Mr. Diaz did not supply the Court with these documents either.

The Government's second argument is that Mr. Diaz cannot meet the 18 U.S.C. § 3553(a) factors to justify compassionate release. Not only has Mr. Diaz "not demonstrated how or why" the factors weigh in his favor, even if the Court could find Mr. Diaz had offered extraordinary and compelling reasons justifying release, but also the balance of § 3553(a) factors weighing against sentence reduction is an independent reason to deny compassionate release. *Id.* at 5. The Government argues just that. The balance of § 3553(a) factors do not warrant release because: (1) Mr. Diaz has a violent criminal history; (2) he has knowingly evaded parole by cutting off his GPS bracelet and escaping; (3) he has had repeated disciplinary infractions while

in custody for possessing dangerous weapons; and (4) he remains a danger to the community. *Id.* at 5-6.

The Government did not explicitly address Mr. Diaz's argument regarding the November 1, 2024 amendment to U.S.S.G. § 5H1.1.

## III.  LEGAL STANDARD

As explained by the First Circuit, 18 U.S.C. § 3582(c)(1)(A) "carved out a narrow exception to the general rule that '[a] court may not modify a term of imprisonment once it has been imposed.'" *United States v. Quirós-Morales,* 83 F.4th 79, 84 (1st Cir. 2023)) (quoting *United States v. Saccoccia*, 10 F.4th 1, 3 (1st Cir. 2021)).  In relevant part, 18 U.S.C. § 3582(c)(1)(A)(i) states:

> The Court may not modify a term of imprisonment once it has been imposed except that . . . in any case . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).

Before a court considers a defendant's motion for compassionate release, it must determine whether the defendant has met the procedural prerequisites for bringing such a motion. *See United States v. Lugo*, No. 2:19-cr-00056-JAW, 2020 U.S. Dist. LEXIS 63673, at *8 (D. Me. Apr. 10, 2020) (finding satisfaction of the exhaustion or thirty-day requirement of § 3582(c) to be a mandatory prerequisite to a motion for

sentence reduction). These requirements are mandatory. *See id.* ("There is no exception to this requirement in the language of section 3582(c), and the Court cannot read one into the section").

When a defendant has satisfied these procedural prerequisites, a court may grant a request for sentence reduction if three conditions are met: "extraordinary and compelling reasons warrant a sentence reduction, such a reduction is consistent with any applicable policy statements issued by the Sentencing Commission, and consideration of the 18 U.S.C. § 3553(a) factors counsels in favor of a reduction." *Id.* (citing 18 U.S.C. § 3582(c)(1)(A)(i)).

As to the first requirement, the statute does not define "extraordinary and compelling reasons." However, in 2023, the United States Sentencing Commission clarified the meaning of "extraordinary and compelling circumstances" within 18 U.S.C. § 3582(c)(1)(A) by promulgating Amendment 814. *See* U.S. SENT'G GUIDELINES MANUAL app. C supp., Amend. 814 (U.S. SENT'G COMM'N 2023).[4] The Commission's approach was to list potential extraordinary and compelling reasons, such as medical condition and age, and impose criteria for a court to consider when assessing each proffered reason for release. *See* U.S.S.G. § 1B1.13. As such, extraordinary and

---

[4]    On April 5, 2023, the United States Sentencing Commission submitted Amendment 814 to Congress, as a response to the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A), which permits criminal defendants to file motions for sentence reduction directly, as opposed to such motions being permitted only from the Bureau of Prisons; this amendment became effective on November 1, 2023. *See* U.S. SENT'G GUIDELINES MANUAL, app. C supp., Amend. 814 (U.S. SENT'G COMM'N 2023). Among other things, Amendment 814 revised the list of "extraordinary and compelling reasons" that may warrant a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). *See* U.S.S.G. § 1B1.13(b) (Nov. 1, 2023) (listing extraordinary and compelling reasons); *see also* U.S. SENT'G GUIDELINES MANUAL, app. C supp., Amend. 814, Reason for Amend. ("The amendment expands the list of specified extraordinary and compelling reasons and retains the 'other reasons' basis").

compelling reasons are considered in light of the Sentencing Commission's current policy statement for proper considerations.

At the second step, the court must ask whether the reduction is consistent with the United States Sentencing Commission's policy statement. 18 U.S.C. § 3582(c)(1)(A). As just noted, the Sentencing Commission issued an accompanying policy statement as § 1B1.13(b) of the United States Sentencing Guidelines to provide courts with further guidance on six categories of extraordinary and compelling bases warranting a sentence reduction: the defendant's 1) "medical circumstances"; 2) "age"; and 3) "family circumstances"; 4) if the defendant was the "victim of abuse" while in custody; 5) "other reasons" similar in gravity as those articulated in (1)-(4); and 6) if the defendant received an "unusually long sentence." U.S.S.G. § 1B1.13(b).

Finally, to warrant compassionate release, a defendant must also establish that a grant of sentence reduction comports with the factors described in 18 U.S.C. § 3553(a). *Saccoccia*, 10 F.4th at 3. This statutory section provides that the Court must consider, inter alia:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a).

A district court may grant compassionate release only if the defendant satisfies each of these steps. *United States v. Duluc-Mendez*, No. 24-1767, 2025 U.S. App. LEXIS 26830, at *8 (1st Cir. Oct. 15, 2025). The movant has the burden of showing his entitlement to a reduced sentence, and "the Court 'has broad discretion in deciding whether to grant or deny a motion for sentence reduction.'" *United States v. Curtis*, No. 1:14-cr-00140-JAW, 2020 U.S. Dist. LEXIS 102045, at *12 (D. Me. June 11, 2020) (quoting *United States v. Britton*, No. 18-cr-108-LM, 2020 U.S. Dist. LEXIS 83396, at *4 (D.N.H. May 12, 2020) (internal citation omitted)).

## IV.    DISCUSSION

Having met the procedural exhaustion requirement, Mr. Diaz's motion for compassionate release is properly before the Court. However, Mr. Diaz has not offered extraordinary or compelling reasons—considered alongside the Sentencing Commission's current policy statement—justifying relief and, moreover, the § 3553(a) factors weigh against release.

### A.    Procedural Exhaustion

Mr. Diaz filed an administrative request with the warden at the complex where he is incarcerated in Coleman, Florida. Mr. Diaz conveyed this information to the Court in his memorandum for compassionate release, where he indicated that he submitted the request for compassionate release on December 2, 2024. *Mot. for Compassionate Release* at 3. However, Mr. Diaz did not attach a copy of his administrative request to the warden, his brief in support of the administrative request, nor the warden's response. Even so, in its response, the Government

acknowledged that Mr. Diaz submitted an administrative request to the warden of his institution, *Opp'n* at 3, and provided the Court with Mr. Diaz's administrative request and the warden's response. *Reduction in Sentence App.*; *Resp. to Inmate Req. to Staff Member*. The Government also offered to supply the Court with the brief referenced in Mr. Diaz's administrative application but not attached to his compassionate release motion. *Id.* at 4, n.2. The Government does not contest Mr. Diaz's exhaustion of his administrative remedies; the Court concludes that Mr. Diaz has satisfied his threshold burden and proceeds to the merits of his motion.

### B.   Extraordinary and Compelling Reasons

The Court first addresses whether Mr. Diaz has set forth "extraordinary and compelling reasons" under the statute. 18 U.S.C. § 3582(c)(1)(a). As the First Circuit explained, "[i]n considering a motion for compassionate release under this section, we have instructed district courts to conduct a holistic inquiry . . . consider[ing] any complex of circumstances raised by a defendant as forming an extraordinary and compelling reason warranting relief." *Duluc-Mendez*, 2025 U.S. App. LEXIS 26830 at *9 (quotations omitted). Broadly construed, Mr. Diaz advances two justifications as extraordinary and compelling bases for his requested sentence reduction: his medical needs and what he considers an error in his initial sentencing under a November 1, 2024 amendment to the Sentencing Guidelines, which was once found in U.S.S.G. § 5H1.1, age. *See Mot. for Compassionate Release* at 4; *Letter by Emmanuel Diaz* at 1-2.

10

### 1.    Inadequate Medical Care

Mr. Diaz's first basis for sentence reduction is inadequate medical care.  The Court acknowledges that inadequate medical care can be an extraordinary and compelling basis for sentence reduction consistent with the Sentencing Commission's policy statement for compassionate release motions.  *See* U.S.S.G. § 1B1.13.

In fact, Mr. Diaz moves for compassionate release pursuant to two sections of the Sentencing Commission's policy statement.    First, Mr. Diaz moves for compassionate release under § 1B1.13(b)(1)(B) of the United States Sentencing Guidelines, which reads as follows:

The defendant is—

    (i) suffering from a serious physical or medical condition,

    (ii) suffering from a serious functional or cognitive impairment, or

    (iii) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13(b)(1)(B); *see Mot. for Compassionate Release* at 4.  Mr. Diaz also asserts his entitlement to early release under § 1B1.13(b)(1)(C).    *Mot. for Compassionate Release* at 5; U.S.S.G. § 1B1.13(b)(1)(C) ("The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death").

However, Mr. Diaz does not provide any support or reasoning to substantiate his claims. Though he asserted that he is prescribed medication in the facility where he is incarcerated and that he requires durable medical equipment, he does not indicate which, if any, of his medical needs are unmet. *Mot. for Compassionate release* at 10-11. By his own admission, Mr. Diaz does not require assistance with self-care, nor does he require assisted living. *Id.* at 11. Thus, he has not presented evidence sufficient under U.S.S.G. § 1B1.13(b)(1)(B). While Mr. Diaz has supplied the names of his medications and his durable medical equipment, he has offered no basis to conclude that his "medical condition[s] . . . require[] long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C).

As the Government pointed out, Mr. Diaz "bears the burden of demonstrating sufficiently extraordinary and compelling reasons to support his request for compassionate release." *Id.*; *see United States v. Galiany-Cruz*, 2023 U.S. App. LEXIS 26539, at *1 (1st Cir. 2023) (explaining "movant bears the burden of establishing extraordinary and compelling reasons") (citing *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021)). Based on the record and reasoning before the Court, Mr. Diaz has not met his burden. The Court therefore concludes Mr. Diaz has not shown an extraordinary and compelling reason pursuant to U.S.S.G. § 1B1.13(b)(1)(B) or § 1B1.13(b)(1)(C).

### 2.    Changes in Law

Mr. Diaz's second basis for sentence reduction is based on a 2024 change in the Sentencing Guidelines.  The November 1, 2024 version of U.S.S.G. § 5H1.1 read, in relevant part, as follows:

> Age may be relevant in determining whether a departure is warranted.
> . . .
> A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses. Certain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use, lack of educational opportunities, and familial relationships. In addition, youthful individuals generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into young adulthood. Youthful individuals also are more amenable to rehabilitation.

U.S.S.G § 5H1.1 (2024); *see* U.S. Sent'g Guidelines Manual app. C supp., Amend. 829 (U.S. Sent'g Comm'n 2024).

A change in law alone cannot be considered an extraordinary and compelling reason for reduction.  *See* U.S.S.G § 1B1.13(c) ("an amendment to the Guidelines Manual that has not been made retroactive[] shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement").  However, a combination argument could establish an extraordinary and compelling reason for reduction.  *See* U.S.S.G § 1B1.13(c) (when a defendant "otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement . . . an amendment to the Guidelines Manual that has not been made retroactive[] may be considered for purposes of determining the extent of any such reduction").

13

As the First Circuit recently instructed, where a prisoner's "combination argument was cognizable under section 3582(c)(1)(A) and section 1B1.13 of the sentencing guidelines and was also supported by evidence . . . the district court was obligated to consider it." *Duluc-Mendez*, 2025 U.S. App. LEXIS 26830 at *10. Unlike the individual seeking compassionate release in *Duluc-Mendez*, Mr. Diaz has not provided sufficient supporting evidence for the Court to seriously engage his combination argument.

Even if Mr. Diaz had established that his medical conditions rose to the level of an extraordinary and compelling reason for reduction in sentence, he still would not be able to use the November 2024 amendment to the Sentencing Guidelines "for purposes of determining the extent of any such reduction" for two reasons. U.S.S.G § 1B1.13(c). First, the Sentencing Commission never made the version of § 5H1.1 that Mr. Diaz cites retroactive, and the amendment took effect long after his November 9, 2021 sentencing hearing. Sentencing judges apply the version of the guidelines in effect at the time of sentencing. 18 U.S.C. § 3553(a)(4)(A)(ii); U.S.S.G. § 1B1.11(a); *United States v. Crudup*, 375 F.3d 5, 8 (1st Cir. 2004); *see Isabel v. United States*, 980 F.2d 60, 62 (1st Cir.1992).[5]

Second, the version of § 5H1.1 Mr. Diaz relies on, which made age a permissible factor to consider when sentencing, has now been deleted by the Commission, U.S. SENT'G GUIDELINES MANUAL app. C, Amend. 836 (U.S. SENT'G COMM'N 2025), because

---

[5]    An exception, not applicable here, arises where the guideline in effect at sentencing would violate the *ex post facto* clause of the Constitution, in which event the court would use the guideline version in effect at the date of the offense of conviction. *See* U.S.S.G. § 1B1.11(b)(1).

judges already consider age, among other factors, when imposing a sentence outside the guideline range under 18 U.S.C. § 3553(a).[6] Accordingly, the Court addresses Mr. Diaz's age-related argument in its consideration of the § 3553(a) factors.[7] *See* discussion *infra* Section IV.C.

As it stands, nothing about Mr. Diaz's sentencing establishes, alone or in combination, an extraordinary and compelling reason for reduction in sentence. In sum, the Court concludes Mr. Diaz has not established an extraordinary and compelling reason for his early release.

### C.    18 U.S.C. § 3553(a) Factors

Separately, the Court concludes the 18 U.S.C. § 3553(a) factors do not weigh in favor of granting Mr. Diaz's requested release. Under 18 U.S.C. § 3553(a), the Court considers:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

---

[6]    Commentary to Amendment 836 explains:

> The Commission envisioned and framed this 2025 amendment to be outcome neutral, intending that judges who would have relied upon facts previously identified as a basis for a departure would continue to have the authority to rely upon such facts to impose a sentence outside of the applicable guideline range as a variance under 18 U.S.C. § 3553(a).

U.S. Sent'g Guidelines Manual, app. C, Amend. 836, Introductory Commentary (U.S. Sent'g Comm'n 2025).

[7]    Age can be a basis for compassionate release under the statute and the Guidelines. Section 3582 contemplates early release for a defendant who "is at least 70," "has served at least 30 years," and whom the BOP has determined "is not a danger." 18 U.S.C. § 3582(c)(1)(A)(ii); U.S.S.G. § 1b1.13(a)(1)(B). Additionally, the Sentencing Commissions Policy Statement contemplates early release for a defendant who "is at least 65," "is experiencing a serious deterioration in physical or mental health because of the aging process," and who "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1b1.13(b)(2). None of these provisions applies to Mr. Diaz, who is currently 35 years old. *Revised Presentence Investigation Rep.* (ECF No. 38) at 2 (*PSR*).

(2) the need for the sentence imposed—

>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>    (B) to afford adequate deterrence to criminal conduct;
>
>    (C) to protect the public from further crimes of the defendant; and
>
>    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

### 1.    Nature and Circumstances of Mr. Diaz's Offense

On November 10, 2020, the Maine State Police (MSP) received information that Mr. Diaz had fled parole in Massachusetts and was possibly in Durham, Maine. *Revised Presentence Investigation Rep.* ¶ 5 (ECF No. 38) (*PSR*). MSP had videos of Mr. Diaz firing several firearms resembling an AR15 style assault rifle and a Glock style semi-automatic pistol at an unknown firing range. *Id.* On November 11, 2020, police recovered a loaded Glock, Model 19 and nineteen rounds of ammunition in a vehicle associated with Mr. Diaz. *Id.* ¶ 6. At the time of arrest, Mr. Diaz was also charged with Fugitive from Justice based on his parole status as an absconder. *Id.*

### 2.    Mr. Diaz's History and Characteristics

Mr. Diaz has an established criminal history, yet a gravamen of his motion for compassionate release is that his criminal history was incorrectly accounted for at sentencing. *Letter by Emmanuel Diaz* at 1. To support this argument, Mr. Diaz relies on the November 1, 2024 version of U.S.S.G. § 5H1.1, which noted "downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses" and that "[c]ertain risk factors may affect a youthful individual's development into the mid-20's." U.S.S.G § 5H1.1 (2024) (emphasis

supplied); *see* U.S. SENT'G GUIDELINES MANUAL app. C supp., Amend. 829 (U.S. SENT'G COMM'N 2024).  Mr. Diaz believes he "wasn't the required age that Congress" specified and "therefore . . . youthful[]ness and state charges [shouldn't] have been used against" him.  *Letter by Emmanuel Diaz* at 2 (capitalization altered).  In other words, Mr. Diaz takes these provisions to mean that neither his conviction at eighteen ("youthfulness") nor his conviction at twenty-four ("mid-20's") ought to have counted for purposes of establishing his criminal history.  Mr. Diaz's reasoning is unpersuasive for at least four reasons.

First, as discussed previously, Mr. Diaz was sentenced in November of 2021, years before the November 2024 amendment to § 5H1.1 took effect.  Even if the November 2024 version of § 5H1.1 remained in effect, it would not apply retroactively to him.  Sentencing judges apply the version of the guidelines in effect at the time of sentencing. 18 U.S.C. § 3553(a)(4)(A)(ii); U.S.S.G. § 1B1.11(a).

Second, even if the November 2024 version of § 5H1.1 existed as of the date of Mr. Diaz's sentencing, the guideline range applicable to Mr. Diaz would not be lower than the sentence Judge Singal imposed.  At the time of sentencing, Mr. Diaz had a criminal history score of fourteen, based on a total of twelve points resulting from convictions in 2008, 2014, 2016, and 2019, and an additional two points pursuant to U.S.S.G. § 4A1.1(d) because "[t]he defendant committed the instant offense while under a criminal justice sentence for Operating After License Suspended, Operating Negligently, Possess to Distribute Class B Substance (Cocaine) and Resisting Arrest."

*PSR* ¶¶ ¶ 33, 34, 38, 41, 45-46.  This resulted in a criminal history Category VI.  *Id.* ¶ ¶ 47.

At sentencing on November 9, 2021, Judge Singal made his guidelines calculations and determined that Mr. Diaz's total offense level was twenty-six and fixed his criminal history category as Category VI, resulting in a guideline sentence range of 120 to 150 months and, after application of the statutory maximum of ten years pursuant to U.S.S.G. § 5G1.1, a guideline range of 120 months, one to three years of supervised release, a fine from $25,000 to $250,000, and a mandatory $100 special assessment.  *Statement of Reasons* at 1, 5 (ECF No. 56).

However, Mr. Diaz argues that his early conviction, *PSR* ¶ 33, which he committed at age eighteen and counted for three points toward his criminal history, should not have counted because he was so young at the time of the conviction.  Extrapolating for him, this would have brought him to a criminal history score of eleven, which results in Category V and a guideline range of 110 to 137 months.  According to Mr. Diaz, "the change in the law of the age factor rising to 25 years old rather [than] the 18 required consideration." *Letter by Emannuel Diaz* at 1 (capitalization altered).  The Court takes Mr. Diaz's argument to be that language in the November 2024 version of § 5H1.1—"[c]ertain risk factors may affect a youthful individual's development into the mid-20's" U.S.S.G § 5H1.1 (2024)—raised the age of maturity to twenty-five.  However, the age of majority remains eighteen.  Mr. Diaz has no basis to exclude from the criminal history calculation the offense committed at 24, which added one point toward his criminal history, *PSR* ¶ 34, and a criminal

history score of ten also results in Category V and a guideline range of 100 to 137 months. Nevertheless, Judge Singal imposed a sentence of seventy-five months of incarceration, far below the guideline range even after excluding Mr. Diaz's conviction at age eighteen.

Third, and relatedly, Judge Singal expressly considered Mr. Diaz's age when imposing his sentence. Mr. Diaz was thirty-one years old at his sentencing hearing. *PSR* at 2. By this Court's count, at the time of his November 9, 2021 sentencing hearing, he had twenty-one prior adult convictions, not including his federal felon in possession conviction for which he was being sentenced. *PSR* ¶¶ 32-45.

What particularly troubled Judge Singal was Mr. Diaz's actions when he was thirty years old, referred to in paragraph 38 of the PSR. *See Tr. of Proceedings* at 18:21-21:15 (ECF No. 58) (*Sent'g Tr.*). When Mr. Diaz allocuted, he told the sentencing judge that he had acted selfishly and urged the judge to consider the impact of the sentence on his family. *Id.* at 17:18-18:20. But Judge Singal focused on an incident that had occurred on October 15, 2020, about one year before his sentencing hearing, when he was thirty. At the time, Mr. Diaz was on parole for a series of crimes he had committed in Massachusetts. *See PSR* ¶ 38. He had been released with a location monitoring device and residing in Michael's House Sober Home in Springfield, Massachusetts. *Id.* But his parole officer learned that Michael's House was going to terminate him due to rule violations, and the officer arranged for him to transition to an alternative program, Hampden County HOPE Program, which included housing. *Id.* Mr. Diaz reported to the parole office as directed and agreed

19

to participate in the recommended program. *Id.* But he asked the parole officer if he could give his cellphone to his girlfriend who was waiting outside in a car. *Id.* The parole officer allowed him to go downstairs to do so but instructed him to return immediately. *Id.*

Instead of returning, Mr. Diaz fled, cut off his location monitoring device, traveled to Maine, and was videoed firing several firearms, including an AR 15 assault style rife and a Glock semiautomatic pistol. *Id.* ¶¶ 5, 38. On November 11, 2020, law enforcement obtained a search warrant and found a loaded Glock 9mm pistol in a vehicle that law enforcement identified as one Mr. Diaz possessed in one of the videos. *Id.* ¶ 6.

Judge Singal closely questioned Mr. Diaz about this entire episode. Mr. Diaz conceded he had lied to his parole officer, *Sent'g Tr.* at 19:13 ("I did, Your Honor, I lied"), had cut off his GPS device, and had taken off from parole. *Id.* at 19:16-18. Judge Singal asked Mr. Diaz:

> THE COURT: Why would you do something like that? Here you're - - you love your family, you love your children, you were going to be in a rehabilitation program.
>
> THE DEFENDANT: I can explain. At the time I had - - I was in charge of my son. My son had nowhere else to go. And I was just scared to go back to jail and my son going back to Florida or back to Atlanta with his other family, and I just messed everything up.
>
> THE COURT: I don't understand. You - - you took off because you wanted to take care of your son?
>
> THE DEFENDANT: I wanted to be around my son, and I knew if I was in jail and they found out - - his family member found out that I was in jail they was going to bring him back to Atlanta or Florida.

THE COURT: So you went to Maine instead?

THE DEFENDANT: I didn't go to Maine right away.  I went - - I was sticking around, trying to figure things out, and then I left for Maine.  I wasn't thinking.

THE COURT: And so in Maine you got a gun and you had videos of you shooting the gun.

THE DEFENDANT:  I did, Your Honor.

THE COURT: What's going on here, in your head, when you're - - escaped parole, you're on the run, they're looking for you in Massachusetts, and you get a gun?  What - - what is that all about?  What kind of thought process is that?

THE DEFENDANT: The guns were already like in Maine.  It was just like I was around some people that had guns; I started shooting the guns.  I wasn't - - I wasn't thinking.

THE COURT: And then you get arrested for having a gun and you're in fail and you're using K2 and have a fentanyl-related drug in your possession.  I'm just wondering, what - - what is stopping you?  Where's the inhibition to stop violating the law? What is - - where is it missing here?  One step, violate the law, another step, violate the law, go the jail, violate the law.  My concern is that you don't seem to have that red light.  Do you understand what I am saying?

THE DEFENDANT: I do, Your Honor.

THE COURT: Can you answer? Maybe you can't, I don't know.

THE DEFENDANT: I was just going through a lot.  I lost my sister, unexpectedly, I still haven't got over losing my father, and I was just going through a lot of stuff and I was trying to escape from reality.

Id. at 19:19-21:11.

Judge Singal's extended colloquy with Mr. Diaz confirms that even if the judge

had factored in Mr. Diaz's current proposition that some of his criminal history

occurred when he was eighteen and into his early twenties and should be excused due

to his youth, the sentencing judge's concern was his criminal conduct and criminal thinking from just a year before the sentencing, when he was thirty. Thus, Mr. Diaz's current argument about his early convictions rings hollow because he continued to commit crimes throughout his twenties and had violated a series of laws when he was thirty, leading to his being charged with a federal felony.

The premise of § 5H1.1, before it was deleted, was that "[t]he age-crime curve, one of the most consistent findings in criminology, demonstrates that criminal behavior tends to decrease with age." U.S.S.G. § 5H1.1. But here, Mr. Diaz's criminal conduct had grown worse, or at least remained constant, up to his early thirties. Judge Singal listed his serious criminal conduct from age eighteen to his escape from parole and his firearm possession just before pronouncing the sentence, and he concluded that the "public needs to be protected." *Id.* 22:25-23:17.

Despite this extensive questioning of Mr. Diaz about his criminal thinking, at sentencing, Judge Singal varied downward and imposed a sentence of seventy-five months of incarceration after taking into consideration Mr. Diaz's age, his "[s]ignificant criminal history including violence and parole violations," to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, and to protect the public from Mr. Diaz's future crimes. *Statement of Reasons* at 3. As further explanation for the variance, Judge Singal noted: "Government requested and was granted a three-level downward variance in recognition of defendant's willingness to appear by video during the ongoing

pandemic, promoting efficient administration of justice during suspended in-person proceedings and advancing the government's interest in resolving cases." *Id.*

Fourth, as the Court has just described, any argument that the prior convictions were part of an episode of youthful indiscretion is undercut by the fact that Mr. Diaz had regular run-ins with law enforcement leading up to his federal crime. His criminal history includes three convictions at eighteen, three at age twenty-four, one at age twenty-five, eleven at age twenty-six, two at age twenty-seven, and one at age twenty-nine before escaping parole and possessing a firearm when he was thirty. *PSR* ¶¶ 32-45.

### 3.    The Need for Mr. Diaz's Imposed Sentence

In reviewing the Court's imposition of sentence, nothing since sentencing has changed to indicate that a sentence reduction is warranted under 18 U.S.C. § 3553(a). After a colloquy at the November 9, 2021 sentencing hearing regarding his family circumstances, his history of cycling in and out of state facilities, and his decision to escape while on parole, *see Sent'g Tr.* at 17:18-20:21, the Court stated a concern that Mr. Diaz struggles to stay on the right path. *Id.* at 20:25-21:4. ("I'm just wondering, what – what is stopping you? Where's the inhibition to stop violating the law? . . . One step, violate the law, another step, violate the law, go to jail, violate the law. My concern is that you don't seem to have that red light").

The sentencing court applied the 18 U.S.C. § 3553(a) factors, specifically Mr. Diaz's history and personal characteristics, the nature and circumstances of the offense, the need for just punishment, and the need to protect the public. *Id.* at 22:13-24. It also noted that there was "some substance" to Mr. Diaz's attorney's argument

23

that Mr. Diaz has never had a substantial sentence before and a sentence within the advisory guideline range even after the variance is more than necessary. *Id.* at 23:19-22. Ultimately, the sentencing court determined to vary downward to a sentence of seventy-five months, which it considered "a huge reduction," on account of Mr. Diaz's age and because the sentence may "make clear to Mr. Diaz that it's time for the stop sign and the red light to come on." *Id.* at 23:23-24:3. Despite his criminal history, Judge Singal exercised substantial leniency.

Mr. Diaz is incarcerated, in part, because he struggles to remain on the right path and that pattern appears to have held while incarcerated. Mr. Diaz is more than halfway through his term of seventy-five months imprisonment and while the Court is encouraged by his repentant note and his determination to reunite with loved ones, *Supporting Letter*, his prison record has not been spotless. In April of 2023, Mr. Diaz was disciplined for possessing a shank during a pat search and in March of 2024, Mr. Diaz was again disciplined for possessing a dangerous weapon. *Opp'n*, Attach. 3, *Ex. 3* (*Inmate Discipline Data*). As Mr. Diaz has had some difficulty complying with prison rules in a controlled setting, these incidents cause concern about whether he will be able to comply with society's rules upon release.

As did Judge Singal, the Court takes seriously its obligation to protect the public from further crimes of the Defendant and concludes granting Mr. Diaz's requested relief of a noncustodial sentence would fail to protect the public from potential future victimization or deter him from future crimes. Granting Mr. Diaz's

motion for early release now would not adequately reflect the seriousness of the offense, promote respect for law, or provide just punishment.

For these reasons, the Court concludes the 18 U.S.C. § 3553(a) factors do not support a grant of compassionate release.

## V.    CONCLUSION

The Court DISMISSES without prejudice Emmanuel Diaz's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release) (ECF No. 63).[8]

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 17th day of November, 2025.

---

[8]    As noted above, Mr. Diaz in his motion for compassionate release additionally requests appointed counsel to assist him in this matter. *See Mot. for Compassionate Release* at 2. Having determined Mr. Diaz's motion warrants dismissal, the Court dismisses his request for appointed counsel as moot.